# Shelton *v.* The State.

## *Murder.*

[Decided June 15, 1905.]

1. *Criminal Law; Appeal; Charge of Court.*—Where exception is taken to a part of the oral charge of the trial court, this court will contsrue the part excepted to in connection with the other part of said charge; and when so construed, if not error, it will not work a reversal even if the isolated part considered by itself is error.

2. *Sam'e; Evidence; Conflict.*—Where the evidence is conflicting, it is for the jury to say what part of it they will believe, if they cannot reconcile it.

3. *Same; Confessions; Admissions.*—While confessions of guilt and admissions of inculpatory facts are determinable, as to their reception as testimony, by the same principle of law, there is a broad distinction as to the weight and effect to be given them as testimony.

4. *Same; Confessions; Admissions; Weight.*—A confession to be satisfactory and effectual should be shown to have been deliberately made and precisely identified, and made as a confession as contradistinguished from an admission of inculpatory facts.

5. *Same; Abstract Charges.*—The giving or refusing an abstract charge is not reversible error, although asserting a correct legal proposition, unless it clearly appears that its giving or refusal was calculated to prejudice the party excepting to the same.

6 *Same; Argumentary Charges.*—Written instructions which assert that the jury can or cannot "look to or consider" certain evidence, are properly refused because argumentative and giving undue prominence to certain portions of the testimony.

7 *Same; Invasion of Province of Jury.*—It is a matter for the determination of the jury as to what inference shall be drawn from the evidence, and a charge is properly refused which seeks to instruct the jury as to inferences to be drawn from certain evidence."

[Shelton v. The State.]

8   *Witnesses; Evidence; Interest; Defendant.*—While a defendant
is a competent witness in his own behalf, the jury may look
to the fact, in considering his evidence and determining what
weight they will give to it, that he is the defendant and inter-
ested in the result of the verdict.

APPEAL from Lauderdale Circuit Court.

Heard before Hon. E. B. ALMON.

In this case, the appellant Dee Shelton was tried un-
der an indictment charging him with the murder of Wil-
liam, alias Mark Hammonds, convicted and sentenced to
the penitentiary for life.   The evidence tended to show
that on a Sunday morning the family of the deceased
went to church, leaving him at home.   On their return,
about 3 o'clock in the afternoon, they found him dead,
and it was shown that his death was caused by a blow
on the head with a blunt instrument, and by a pistol shot
through the head.   It was shown that about twelve
months before, the defendant had been warned by the
deceased not to pass through the premises of the latter,
and defendant had made some threat later, that he would
kill deceased if he came out on him again.   It was shown
that, at the time of his death, the deceased owned a pis-
tol, which came in a box, the box having a picture of the
pistol, and the name of the maker on it.   It was shown
that ,shortly after the killing, this pistol was missing,
and that the defendant had a pistol which witnesses
said answered the description of the one owned by the
deceased, and which also corresponded with the picture
and name on the box in which the deceased got the pistol
owned by him.   This pistol, it was shown, the defendant
shortly after the death of the deceased, gave to one Bar-
nett, having lost it to him in a game of "craps."   On
Sunday evening, after the deceased was discovered dead,
a large number of people, including the defendant, were
at his house, from whence the defendant went home.   On
Monday morning, certain hound dogs were taken to the
house, and made to smell certain papers of the deceased
which had been found by his family, disarranged, on their
return from church. These dogs took several starts, but
finally led to the house and room of the defendant.   The
defendant was present when the dogs were taken to the
house of the deceased and went with others, following

[Shelton v. The State.]

them on their trail. Shortly after this, the defendant was told that he would be arrested, charged with the murder of the deceased, who was his uncle. That, on being so informed, the defendant said, "If Uncle Mark had treated you like he has treated us, you would have wanted to kill him too.

On behalf of the defendant, and in explanation of his statement with reference to his uncle Mark, it was shown that the family of the defendant believed that deceased had defrauded the mother of the defendant in a division of property between her and the deceased, coming to them from a deceased parent. Also, in reference to the pistol, the defendant testified that the pistol, which was so introduced in evidence, and which he lost in a game of craps, came into his possession from one Black, a stranger, who proposed to sell it to him for three and a half dollars. There was conflict in the testimony, but the above is sufficient for an understanding of the charges of the trial court, and the opinion herein.

The general charge of the court to the jury, to which exceptions were taken, was as follows: "If there is conflict in the evidence, you should reconcile such conflict if you can do so as to make all the evidence speak the truth; but if there is such conflict, and you are unable to reconcile it, then it is for you to say which you believe." The court of its own motion, also charged the jury; "Confessions of a defendant in cases of this kind are received with great caution. They are easily fabricated, and the detection and exposure of their fallacy is often difficult. But when confessions are deliberately and precisely identified, they are among the most satisfactory and effectual proofs of guilt. In consideration and determination of the credibility of confessions, or the effect and weight to which they are entitled, the jury must look to all the facts and circumstances under which the confessions are made; those which are introduced before the court, if shown to them, as well as any other that may be introduced." Written charges were requested by the defendant, and refused by the court, numbered and as follows: "Unless the evidence of the defendant's guilt is so full and convincing that the jury would venture to act upon it in matters of the greatest importance to them-

ALABAMA.

selves, then I charge you that the case is not made out
by that measure of proof that the law requires in crim-
inal cases and you must find the defendant not guilty."
8. "The evidence in this case must convince the mind of
each individual member of the jury to a moral certainty
and beyond a reasonable doubt that the defendant is
guilty, and unless the evidence of guilt be such that each
individual member of the jury, after careful considera-
tion thereof, would not hesitate to act upon it in mat-
ters of the highest importance to themselves, then the
case is not made out by that measure of proof required
in criminal cases, and you cannot find the defendant
guilty. 11. "Unless the jury find from the evidence be-
yond all reasonable doubt that the pistol lost in a game
of craps to Barnett was the pistol of W. A. Hammonds
and was at the house of W. A. Hammonds when he was
killed, then, I charge you that the defendant's possession
of the pistol cannot be looked to by you as evidence of
guilt." 12. "The jury must find from the evidence to
a moral certainty and beyond a reasonable doubt that
the pistol lost by the defendant to Henry Barnett in the
game of craps was the pistol of W. A. Hammonds, and
was at the house of W. A. Hammonds at the time he was
killed before they can look to the possession of the pistol
by the defendant and his explanation of his possession,
as evidence of guilt." 13. "Before you can consider
defendant's possession of the pistol lost to Henry Bar-
nett as evidence of guilt, you must believe from the
evidence beyond a reasonable doubt that the pis-
tol was the pistol of W. A. Hammonds and was in the
house of W. A. Hammonds at the time he was killed." 14.
"The defendant is not required to make any explanation
of his possession of the pistol lost in the game of craps
to Henry Barnett, unless the jury are convinced from
the evidence to a moral certainty and beyond a reas-
onable doubt that said pistol was the pistol of W. A.
Hammonds and in his house at the time of the killing,
and unless the jury are so convinced, they will not con-
sider any explanation made by the defendant of his pos-
session of the pistol." 15. "Unless the jury believe
from the evidence to a moral certainty and beyond a rea-
sonable doubt that the pistol lost in the game of craps to

[Shelton v. The State.]

Henry Barnett was the pistol of W. A. Hammonds and was in the house of W. A. Hammonds when he was killed, then I charge you it is wholly immaterial whether the explanation made by the defendant of his possession, is reasonable or not, and you will not give any consideration to such explanation." 16. "Gentlemen of the jury, I charge you that the evidence in this case does not establish the fact that the pistol lost by the defendant to Henry Barnett, was in the house of W. A. Hammonds, or about the place when he was killed; and you cannot consider defendant's possession of said pistol, or his explanation of such possession, as evidence of defendant's guilt." 18. "The only purpose for which you can consider the presence of the hounds at the scene of the kiling on Monday after killing, if you find from the evidence that they were there, and the defendant was with them, is a mere circumstance tending to show an absence of conscious guilt on the part of the defendant." 19. "The presence and actions of the hounds at the place of the killing, on Monday after the killing, if you find they were there, and did anything, from the evidence, can only be considered by you as a circumstance tending to show a want of conscious guilt on the part of the defendant." The defendant also excepted to the following part of the general charge of the Court to the jury: "The defendant was examined in his own behalf. You should weigh and pass on his evidence as you do other witnesses, but in doing so, you should take into consideration, that he is an interested witness, and if convicted, he will suffer the punishment fixed by the jury." The court, at the written request of the solicitor, gave the following charge: 1. "In weighing and considering the evidence of the defendant, the jury may take into consideration the fact that he is the defendant and interested in the result of the case."

The defendant was convicted of murder in the first degree, and his punishment fixed at imprisonment for life. He appeals.

No briefs came to the reporter.

ANDERSON, J.—The oral charge of the court did not require the jury to absolutely reconcile the testimony which was in hopeless conflict, but instructed them that

if they could not reconcile it, it was for them to say which they would believe. And we must consider the whole sentence from which the excepted part is taken before putting the trial court in error, if said sentence as a whole states the law correctly.—*Brown v. State,* 38 So. Rep. 268. The correctness of this charge is not questioned in the cases of *Sherrill v. State,* 138 Ala. 3, and *Clare v. State,* 111 Ala. 50, as the charges in those cases were not the same as the oral charge in the case at bar.

There was an exception to a part of the oral charge in reference to confessions, and the record shows that, in instructing the jury as to the weight to be given confessions, the judge among other things said: "But when confessions are deliberately and precisely identified they are among the most satisfactody and effectual proofs of guilt." The learned judge doubtless intended to use the word *made* after deliberately, or used it and it was inadvertently omitted from the bill of exceptions, but its omission renders the charge bad and this court is confined to the record. The oral charge on this subject would have clearly stated the law, had it included this word.—*McAdory v. State,* 62 Ala. 154. In order, however, for confessions to be among the most satisfactory and effectual proofs of guilt, it is not sufficient that they are deliberately and precisely identified. They must have been deliberately *made* and precisely identified. They may be deliberately and precisely identified and yet not deliberately *made.* In order, however, that declarations of an accused, though deliberately made and precisely identified, should be among the most satisfactory and effectual proofs of guilt, the said declaration must have been a confession, as contradistinguished from mere inculpatory admissions. It is true that the admissibility of confessions and inculpatory admissions are determinable under the same principles.—*Wilson v. State,* 84 Ala. 426; yet, there is a very broad distinction between the weight and effect to be given a previous admission of guilt and one that might be damaging as evidence against an accused, but which does not rise to the dignity of a confession.

"A confession is a voluntary admission or declaration by a person of his agency or participation in a crime."— 6 Am. & Eng. Ency. Law, 521; *People v. Parton,* 49 Cal. 638. We cannot take what was said by the defendant as a confession in the sense that it should be regarded by the jury as "Among the most satisfactory and effectual proofs of guilt:" "If Uncle Mark had treated you like he has treated us, you would have wanted to kill him too," was an inculpatory admission, but was far from being a confession that he had killed him. The charge, therefore, but for the omission of the word hereofore mentioned, while a correct exposition of the law, was abstract, because the defendant had made no confession.

"It is not reversible error for the court to refuse an abstract charge, nor will the giving of an abstract charge which asserts a correct legal proposition, operate a reversal, unless it appears that on account of the circumstances of the case and the character of the charge given it was calculated to prejudice the party excepting."— *Dennis v. State,* 112 Ala. 64.

We are not prepared to say, in the case at bar, that this charge was not prejudicial to the defendant. The jury may have inferred that what was said by the defendant was a confession on his part, and may have applied, in the consideration thereof, the rule laid down by the court.

In *Covington v. State,* 79 Ala. 691, the court said: "We think it is not improbable that the learned judge may have been misreported as to the language used in the charge, but we are bound to take it as we find it in the record; and so taking it, it is amenable to two objections. The first is, that it deals with mere admissions of inculpatory facts as if they were confessions of guilt. There is a broad distinction between the two. When a person only admits certain facts from which the the jury may or may not infer guilt, there is no confession. We may use the word confessions for admissions, but to sum up mere inculpatory admissions and denominate them a confession, impiles that they amount to a confession of guilt. The judge (as he is represented) did not classify this evidence properly. It is not direct, or as he terms it

[Shelton v. The State.]

positive evidence of guilt, but it belongs to circumstantial evidence, the admitted facts being circumstances proved by the prisoner's admissions, instead of being proved by some witness who was present when these facts transpired. If the same facts had been testified to by a witness who saw them transpire, that would have been circumstantial evidence, because no witness saw this man participating in the burglary. He was not seen at the broken house or on the premises, and he does not admit that he was ever at the chicken-house, or saw the house, or knew there was such a house, or knew a burglary had been committed. He admitted facts which were very powerful evidence against him of complicity in the burglary, but all the facts he admitted could have existed consistently with his perfect innocence of the crime of burglary."—See note on page 522, Am. & Eng. Ency. Law, (2nd ed.)

Charges 7 and 8 were properly refused as they have been repeatedly condemned by this Court.—*Walker v. State,* 139 Ala. 56; *Amos v. State,* 123 Ala. 50; *Rodgers v. State,* 117 Ala. 9; *Thompson v. State,* 131 Ala. 18; *Goodlett v. State,* 136 Ala. 39; *Watkins v. State,* 133 Ala. 99; *Allen v. State,* 134 Ala. 159; *Willis v. State,* 135 Ala. 429; *Deal v. State,* 136 Ala. 52; *Smith v. State,* 137 Ala. 22; *Jarvis v. State,* 138 Ala. 17. *Burton v. State,* 107 Ala. 108, and *Brown v. State,* 108 Ala. 18, were condemned in *Rogers v. State,* 117 Ala. 9, and were expressly overruled on this point in the case of *Amos v. State,* 123 Ala. 50. The case of *Brown v. State,* 118 Ala. 111, has been in effect overruled by numerous decisions of this Court, and is hereby expressly overruled in so far as it holds that charge 10 should have been given.

Charges 11, 12, 13, 14, 15 and 20 were properly refused. *Stone v. State,* 105 Ala. 60; *Liner v. State,* 124 Ala. 1; *Nicholson v. State,* 117 Ala. 32; *Crawford v. State,* 112 Ala. 1; 1 Mayfield's Dig., pp. 170, 174.

Charge 16 was properly refused. The jury could have well inferred from the evidence that the pistol was at the house of the deceased when he was killed.

Charges 18 and 19 were properly refused. All inferences to be drawn from the defendant's presence when

[Rose v. The State.]

the hounds were on the trail was a question for the jury and not the court.

The fact that the defendant was interested in the result of the case was a circumstance affecting his credibility as a witness and which could be considered by the jury. The third exception to the oral charge was without merit; and there was no error in giving charge No. 1, requested by the State.—*Smith v. State,* 118 Ala. 117.

There was no error in admitting the box in evidence. It had been identified as the box in which deceased had kept his pistol. The evidence showed that the pistol had been delivered to deceased in a box that had a picture of the pistol on the outside cover, and said box was clearly admissible to help identify the pistol.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

McClellan, C. J., and Tyson and Deoson, JJ. concurring.