(118 So. 396)

PARKE v. DENNARD.   (2 Div. 924.)

Supreme Court of Alabama.   Oct. 18, 1928.

Reese & Reese, of Selma, and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

Hobbs, Craig & Brown, of Selma, for appellant.

GARDNER, J. Appellant, Clifford W. Parke, on the night of October 4, 1926, between the hours of six and seven o'clock, shot and killed Randolph Dennard. The shooting occurred at the home of Parke, in Selma. Appellee, Myrtle Dennard, is the widow of Randolph Dennard, and as administratrix of her husband's estate, instituted this suit against Parke under our Homicide Statute (section 5696, Code of 1923) to recover damages for the alleged wrongful killing of her intestate. There was verdict and judgment for the plaintiff in the sum of $20,000, from which defendant prosecutes this appeal.

Defendant interposed pleas of autrefois acquit, former jeopardy, and res adjudicata. These pleas were based upon defendant's acquittal and discharge upon his plea of insanity of the offense of murder of plaintiff's intestate after due indictment, arraignment, and trial for the offense.

The ruling of the trial court sustaining plaintiff's demurrer to these pleas is supported by the decided weight of authority as well as sound reasoning. 17 Corpus Juris, pp. 981–2; 16 Corpus Juris, pp. 235–6. The case of Phillips v. Kelly, 29 Ala. 635, is, in principle, in harmony with the weight of authority as above indicated. See, also, Kansas City R. R. Co. v. Sanders, 98 Ala. 293, 13 So. 57.

Issue was joined upon the plea of the general issue, and special pleas of self-defense, defense of his wife, and insanity.

Plaintiff's demurrer to plea D—defense of defendant's home—was sustained, and this ruling is assigned for error. This plea charges that defendant's "right to the privacy, security, and control of his home was, or reasonably appeared to be, in imminent danger of being destroyed by plaintiff's intestate." There is no averment that defendant or any member of his family was in any peril or that any felony was about to be committed. As held by this court in Lewis v. State, 178 Ala. 26, 59 So. 577, a person has "no right to kill to prevent a mere trespass, which is unaccompanied by imminent danger of great bodily harm or felony, and which does not produce in his mind the reasonable belief of such danger." To like effect are the cases of Carroll v. State, 23 Ala. 28, 58 Am.

Dec. 282, and Bray v. State, 16 Ala. App. 433, 78 So. 463. The case of Crawford v. State, 112 Ala. 1, 21 So. 214, relied on by counsel for appellant, is not in conflict with the conclusion reached, and is in fact in harmony with the above-cited authorities. The plea was subject to the demurrer interposed, and this ruling was therefore free from error.

It is suggested in brief of counsel for appellee that any rulings touching upon the defense of insanity need not be reviewed, as the trial court erroneously permitted the interposition of this defense, and therefore no error prejudicial to appellant could be made to appear. It is the general rule that insane persons may be held to liability for their tortious acts or negligence. 32 Corpus Juris, 749; White v. Farley, 81 Ala. 563, 8 So. 215. By the weight of authority, however, recoverable damages are limited to compensation for the acts or injury sustained by the plaintiff. 32 Corpus Juris, 751; White v. Farley, supra. The damages provided for under our Homicide Statute are punitive and not compensatory. Dowling, Adm'r, v. Garner, 195 Ala. 493, 70 So. 150.

Following the line of reasoning in the authorities cited, exempting insane persons from exemplary damages, the conclusion logically follows that in actions under our Homicide Statute the plea of insanity presents a valid defense, and the insistence to the contrary is without merit.

Following his acquittal upon his plea of insanity defendant was on October 30, 1926, committed to the Alabama Insane Hospital by order of the circuit court, where he remained until "discharged on furlough." December 23, 1926. During this period of time he was under observation of Dr. Partlow, superintendent of the hospital, and Dr. Toombs Lawrence, the physician in charge of the particular ward in which defendant was assigned. That these physicians were duly qualified experts, especially in the branch of their profession concerning mental diseases, was not questioned. A specialist in mental diseases is known as a psychiatrist, and there was clearly no error in permitting Dr. Partlow to state that in his opinion such a specialist was better prepared to give expert opinion on mental diseases than an ordinary surgeon or general practitioner.

The evidence for defendant tended to show the mental disease with which he was afflicted was paranoia—a diseased condition of the mind considered incurable, according to the undisputed proof. Doctors Partlow and Lawrence had close and more or less constant observation and considerable examination of defendant while in the hospital. They pronounced him as a paranoiad personality, but not a paranoiac, and that while defendant was "eccentric and cranky" he was not suffering from a mental disease when he entered the state institution. Those physicians were permitted to testify, over defendant's

objection, that considering defendant's mental condition when he entered the hospital on October 30, 1926, they were of the opinion that his condition as to mental disease on October 4, 1926, was the same, and that if he was free from such mental disease on the 30th of October he was likewise so free from such a disease on October 4th.

It is strenuously insisted this action of the court constitutes reversible error, as these physicians had no observation of defendant on this latter date. We are of the opinion the insistence is without merit. These physicians were experts in that particular branch of the medical profession, with many years' experience and observation of patients in the hospital. Defendant's evidence tended to show he was suffering on October 4th with an incurable mental disease, and we think these experts were properly permitted to testify that upon their observation and examination from October 30th to December 23d, defendant had no such mental disease a few weeks prior to his entry into the hospital. We conclude therefore there was no error in this ruling of the court. This witness was also properly allowed to state that in his opinion such a personality had sufficient will power to refrain from doing wrong if he so desired, and that he had sufficient mentality to know it was wrong to do the particular act in question. 32 Corpus Juris, p. 596. The assignments of error raising these questions are not well taken.

Dr. Partlow, in stating the occasion of his first acquaintance with defendant, volunteered the information that it was when defendant's daughter was a patient at the hospital. In view of defendant's plea of insanity, we think it was proper to permit plaintiff to elicit from the witness the further information that the daughter was there as a drug addict only, as rebutting any adverse inference that may have resulted from such statement.

Charges 12, C, F, Q, and R, given for plaintiff, are criticised for the use of the expression "disease of the brain," the insistence being that more correctly the expression should be "disease of the mind." There have heretofore been no refined distinctions as to these two expressions, but they have been rather freely used interchangeably.

In defendant's insanity plea is the expression "the defendant's mind or brain was diseased," and in the testimony of Dr. Partlow the words were also used interchangeably, as well likewise in the oral charge of the court, to which no objection was interposed. They were so used in the Parsons' Case, 81 Ala. 577, 2 So. 854, 60 Am. Rep. 193, and this court has approved instructions to the jury using this language. Lide v. State, 133 Ala. 43, 31 So. 953; Braham v. State, 143 Ala. 28, 38 So. 919. See, also, 32 Corpus Juris, 594. We think the expression has attained a fixed meaning as having relation to mental disease,

and no occasion now arises for the distinction sought to be made by counsel for appellant. Clearly no such distinction appears to have been in the mind of the court or counsel during the trial of the cause, and for all practical purposes for the jury's consideration, the language was in no way misleading.

Defendant's pleas of self-defense and defense of his wife alleged freedom from fault in bringing on the difficulty.

Objection is made to charges 8 and 9 given for plaintiff upon the ground this misplace the burden of proof. The case of Riley v. Denegre, 201 Ala. 41, 77 So. 335, wherein is cited Morris v. McClellan, 169 Ala. 90, 53 So. 155, is sufficient answer to this objection. The case of Ashworth v. Ala. Great So. Ry. Co., 211 Ala. 20, 99 So. 191, holds nothing to the contrary, and, indeed, cites approvingly the Riley Case, supra. See, also, 10 R. C. L. p. 897.

The further objection that these charges required an honest belief of impending danger, pretermitting actual danger of life or great bodily harm, is also untenable. The charges but followed substantially the language of these special pleas. Buckner v. Graves, 210 Ala. 294, 98 So. 22. Moreover, under the undisputed proof deceased was in his shirt sleeves and unarmed, and at the time the fatal shot was fired was fleeing from defendant's house, and the objection is therefore abstract.

Appellant groups charges 1, 2, 3, 4, 13, 14, B, D, J, T, U, X. The language of these several charges may be found in the following of our decisions: Charge 1, Winter's Case, 123 Ala. 6, 26 So. 949; charges 2 and 3, Green's Case, 143 Ala. 10, 39 So. 362; charge 4, Quesenberry's Case, 3 Stew. & P. 315; Green's Case, 143 Ala. 10, 39 So. 362; charges 13 and 14, Parsons' Case, 81 Ala. 594, 2 So. 854; charge B, Lide v. State, 133 Ala. 51, 31 So. 953; charge D, Howard's Case, 172 Ala. 402, 55 So. 255, 34 L. R. A. (N. S.) 990; charges J and T, Parsons' Case, supra; charge U, Howard's Case, 172 Ala. 410, 55 So. 255, 34 L. R. A. (N. S.) 990; charge X, Shelton v. State, 144 Ala. 110, 42 So. 30.

It may be the court could have been justified in the refusal of some of these charges as argumentative; but they state no erroneous propositions of law, and no reversible error appears from the action of the court in giving them at plaintiff's request.

We have previously considered charges 8, 9, 12, C, F, Q, and R, and deem further comment unnecessary. The further objection to charge R, that it ignores the plea of self-defense, is clearly without merit. The charge was dealing only with the plea of insanity and so discloses upon its face, and was not capable of being confused with the other defenses interposed.

There was no error in refusing charge A requested by defendant. The substance of this charge is embraced in given

charge B. Moreover, the charge is argumentative, and gives undue prominence to one phase of the evidence. Alabama Power Co. v. Goodwin, 214 Ala. 15, 106 So. 239.

[18] There are a few remaining questions of evidence that need but brief consideration. The defendant testified with some detail concerning any facts that might be considered as affecting his mental condition, including his consumption of great quantities of intoxicants during his adult life, and his addiction at one time to the morphine habit, as well also some minor occurrences in his youth. He also testified, without objection, to much conduct on his part at various times tending to show abnormal condition of the mind. In some few instances objections were interposed and sustained. No precedent for evidence of this character has been called to our attention, and we entertain much doubt of the propriety of admission of proof by the party himself pleading insanity, as to previous acts and conduct on his part tending to establish his own mental unsoundness. But passing this question by without decision, we consider the objections interposed. It requires no discussion to disclose there was no error in sustaining objection to the question, "Is it or not a fact you have been imposed upon all your life?" or another, "Tell of any conspiracies against you;" and to whom he told of any threats against him was wholly immaterial.

It appears that the question asked defendant (sixth assignment of error) was answered subsequently by witness Scott, which evidence was not contradicted. Defendant, therefore, had the benefit of this evidence. Bierley v. Shelby Iron Co., 208 Ala. 25, 93 So. 829.

We think sufficient facts were elicited from defendant concerning the incident, the basis of the seventh assignment, and error cannot be predicated thereon. The eighth assignment does not disclose relationship to the defense of insanity, and the ruling on this question was without error. This observation is likewise applicable to the tenth and seventeenth assignments. We have previously expressed our view as to assignment of error No. 9.

Defendant offered evidence as to the bad character of deceased for peace and quiet, and that he was drinking when he came to defendant's house, with further proof of threats made by deceased against defendant. But under assignment of error embraced in group 4 of appellant's brief, defendant further offered to show a charge of assault with intent to murder against deceased by a Mrs. Culverhouse, the knowledge on defendant's part of an agreement made by deceased in open court never to return to Selma by way of settlement of some criminal charge, and the records of the court so disclosing such agreement. These particular matters were not admissible as evidence of bad character (Crawford's Case, 112 Ala. 19, 21 So. 214), and their relevancy otherwise is not made to appear.

Another group of assignments of error relate to the action of the court in permitting Stanfill, chief of police, who arrested defendant just following the shooting, and who had known defendant a long number of years, to testify that upon the occasion of his arrest defendant acted in "a rational manner" and his "actions and expressions" were "logical and connected." These assignments are without merit. Parrish v. State, 139 Ala. 28, 36 So. 1012; 16 Corpus Juris, 752.

A consideration by the court in consultation of the testimony of defendant's witness Dr. Burns persuades us that it sufficiently embraces an answer to the question forming the basis of the sixteenth assignment of error, and that the ruling thereon, if error, worked no prejudice to the defendant.

Our conclusion, previously stated, that the pleas of autrefois acquit and res adjudicata, based upon the criminal proceedings, constituted no answer to this complaint, suffices as to assignments 23 and 24 without further consideration.

Upon consideration of the motion for new trial much deference is due to the opinion of the trial judge, and his conclusion will not be here disturbed unless plainly wrong. That there was ample evidence to sustain the verdict of the jury in favor of the plaintiff cannot be seriously questioned. The record contains no indication of any appeal to passion or prejudice, and the cause appears to have been fairly and impartially tried. We find no justification in this record for a disturbance of the ruling of the learned trial judge in denying the motion for a new trial.

We reach a like conclusion upon the question of excessiveness of the verdict. Damages in cases of this character are awarded by way of punishment and not as compensation for a life taken. The admeasurement of the recovery must be by reference to the quality of the wrongful act and the degree of culpability involved. Richmond & D. R. Co. v. Freeman, 97 Ala. 294, 11 So. 800; L. & N. R. R. Co. v. Cross, 205 Ala. 626, 88 So. 908; Mobile Electric Co. v. Fritz, 200 Ala. 692, 77 So. 235. Much must be left to the sound discretion of the jury, though a revisable discretion in a proper case. Montgomery Lt. & Power Co. v. Thombs, 204 Ala. 678, 87 So. 205; Alabama Power Co. v. Talmadge, 207 Ala. 86, 93 So. 548. As in the case of Mobile Electric Co. v. Fritz, supra, the evidence for plaintiff justified a finding by the jury of the highest degree of culpability, and by their verdict defendant's sanity was also determined. The trial judge expressed his views in a written opinion on the motion, and reached the conclusion the sum of $20,000 awarded plaintiff was not excessive. This court is unwilling, upon full con-

216

sideration of the cause in consultation, to disturb the ruling of the court below.

 It requires no argument to demonstrate there was no error in sustaining plaintiff's objections to the introduction, on the motion for a new trial, of certified copies of tax assessments of defendant for the years 1926 to 1928, inclusive, and the mortgage for $3,000 executed by defendant. This proffered evidence was irrelevant.

It results as our conclusion that no reversible error appears in the record, and the judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.