33 So.2d 18

## COLLINS v. STATE.
### 4 Div. 472.

Supreme Court of Alabama.

Dec. 18, 1947.

Lewis & Lewis, P. S. Lewis, and C. R. Lewis, all of Dothan, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

FOSTER, Justice.

This appellant was convicted of murder in the first degree, and her punishment fixed at imprisonment in the penitentiary for life.

It is not contended that she in person killed the deceased, whose name was Ruby Lee Collins, but that she was instrumental in having it done. Ruby Lee Collins had shortly before the time she was killed been tried and acquitted of the murder of J. B. Collins, a brother of this appellant. She was killed on Wednesday night, January 29, 1947, about 6:30 o'clock, as she was sitting in her place of business preparatory to closing it for the day. She had been out in front and locked the gas pump, and gone back into storeroom, and was sitting in the room in a rocking chair by the window, when there was a shot from somewhere outside the window, the pistol ball going through her head and lodging in the back part of her skull.

This appellant had previously been married to T. J. Harris and they were separated—he living in Cincinnati. She and her brothers, including J. B. Collins, who had been killed by Ruby Lee, Buford Collins, and W. B. Finn, a half-brother who was called "Buddy," were operating a taxicab business in Dothan, and used the telephone in a barber shop which they also had as their headquarters.

The jury could have found from the evidence that this appellant sent or caused to be sent a telegram to T. J. Harris in Cincinnati, advising him that his mother was dead, and to come at once. He received the telegram, although she denied sending it, but admits paying the charges for it. In response to the telegram Harris came to Dothan by bus, reaching there Saturday about midnight, January 25, 1947, and went immediately to appellant's house where he remained until after Ruby Lee was killed Wednesday night. He was under indictment for this offense, and testified in the case implicating appellant.

The evidence shows that this appellant borrowed a pistol from Alberta Key, and hid it in her house, and also borrowed thirty dollars from her. The evidence also tends to show that the bullet which was taken from the skull of Ruby Lee after she died was shot from this pistol.

■ T. J. Harris testified that this appellant made up the plan by which, in substance, Finn was to do the actual killing, but she wanted the backing of Harris paying him forty dollars, and that she was afraid to have her brother Buford to back him because he talked too much, and that was the reason Harris was notified to come down there. He was told his mother was not dead, and that was only an excuse to get him there. On Tuesday night, before the killing on Wednesday night, Finn and Harris proceeded to Ruby Lee's place of business, Finn with a pistol and Harris with a shotgun; but she had closed up and gone for the day. The next night they went back, armed as before, and hid under a nearby house until they saw her go out in front and lock the gas pump, and go back in the storeroom, when they slipped around by the side of the house where she was sitting by the window, and Finn shot her with the pistol twice. That they then ran off, and as they ran he threw his gun down in some weeds. Later they were arrested, and he told the officers how it was, carried them to where his gun was hidden, and confessed to the whole proceedings, and testified to it on the trial of the defendant. There was sufficient corroboration to comply with the statute. Section 307, Title 15, Code.

■ There are only a few questions presented on the trial: One is with reference to the testimony of Paul E. Shoffeitt, assistant state toxicologist, who made an examination of Ruby Lee after her death, and found a lead bullet in the back of her skull, which he produced. He testified to

his qualifications as an expert in respect thereto; objections were made to the sufficiency of his qualifications, which were overruled; and that presents one of the questions in the case. He testified that with the pistol which this appellant borrowed from Alberta Key, and which she had in her house, he shot a lead bullet from it and that he compared the pattern on it with that which he found on the bullet in the head of deceased, and testified that in his opinion they both were shot from the same pistol, explaining in detail how that conclusion was reached. He further testified that in his opinion the death of deceased was caused by that bullet wound in the head.

We have had occasion several times to consider questions of this sort, and the principles of law applicable to the same have been repeated frequently, so that it will not be necessary to do so again, except to say that, in our opinion, the testimony was sufficient to justify the ruling of the court in the exercise of his discretion in permitting the witness to give expression to the opinion which we have just stated. Hicks v. State, 247 Ala. 439, 25 So.2d 139; Redus v. State, 243 Ala. 320, 9 So.2d 914; Wilson v. State, 31 Ala.App. 21, 11 So.2d 563.

We are of the opinion that the record does not show reversible error in connection with said testimony.

■ The court refused at the written request of appellant charge No. 9, as follows:

"The court charges the jury that if they believe from the evidence that defendant had a knowledge of a conspiracy to kill Ruby Lee Collins, but that she did not actually participate therein, then you cannot find defendant guilty."

This charge would require an acquittal of defendant if she did not participate in the killing of Ruby Lee Collins, but had knowledge of a conspiracy to kill her, although she not only had knowledge of such conspiracy but was a party to it and formulated the conspiracy itself. The use of the words "participated therein" in the charge could very well be referable to the killing of Ruby Lee Collins rather than to the conspiracy to kill her. Of course if she did not participate in the conspiracy, or had no part in furthering the enterprise or encouraging it, she could not be guilty since she did not take part in the actual killing. The charge is not hypothesized upon the fact that her only participation in the conspiracy was knowledge of it.

The court also carefully charged the jury with reference to the necessity of appellant to be a party to the plan or to aid and abet it in such a way as to make her responsible as a party to the crime. Section 14, Title 14, Code.

Moreover, the charges given for appellant have been lost or destroyed, and are not included in the record as certified by the reporter. For all those reasons error cannot be founded on the refusal of charge No. 9.

■ The contention is also made by appellant that the verdict was contrary to the great weight of the evidence, and that the judgment should be reversed and the cause remanded.

In the first place it may be said there was no motion made to set aside the verdict and judgment, and for a new trial on that or any other ground, 2 Ala.Dig. Appeal and Error, ⊕294 (1); and, in the next place, after a careful consideration of all the evidence in the case it is clear that the matter of appellant's guilt was essentially one for the jury, and that there was ample evidence to sustain their verdict.

We have examined the entire record in the case, as it is our duty to do, and observed all questions raised on the trial and all the proceedings in it, and find nothing in it adverse to appellant which would call for a reversal of the judgment.

It results that the judgment is affirmed.

Affirmed.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.