125 So.2d 709

John Lewis McPHEARSON

v.

STATE of Alabama.

2 Div. 406.

Supreme Court of Alabama.

Dec. 1, 1960.

Rehearing Denied Jan. 12, 1961.

See also 40 Ala.App. 168, 109 So.2d 755.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

LAWSON, Justice.

The appellant, John Lewis McPhearson, was indicted by a grand jury of Choctaw County for the first degree murder of his wife, Irma Lee McPhearson.

Upon arraignment McPhearson pleaded not guilty and not guilty by reason of insanity.

His trial resulted in a verdict of guilty of murder in the first degree and his punishment was fixed at life imprisonment. Judgment and sentence were in accord with the verdict. McPhearson appealed to this court. Subsequent to the taking of his appeal, his motion for a new trial was overruled.

We have concluded after a careful and studied examination of the voluminous record that the trial court erred to a reversal in a certain respect during the course of the trial. Hence, we deem it unnecessary to burden this opinion with a treatment of the insistences made by the appellant to the effect that the trial court erred in overruling certain preliminary motions made by the appellant and in refusing to declare a mistrial because of the alleged misconduct of the audience attending the trial. We have no reason to anticipate that these questions will be presented on another trial.

Perhaps we should observe that the trial court did not abuse its discretion in refusing the appellant's request to examine each juror individually after the court had qualified the jury. The court advised the appellant that he could examine the jury as a whole and this procedure was pursued. Burns v. State, 226 Ala. 117, 145 So. 436. See Rose v. Magro, 220 Ala. 120, 124 So. 296; Alabama Clay Products Co. v. Mathews, 220 Ala. 549, 126 So. 869.

deGraffenried, deGraffenried and deGraffenried, Tuscaloosa, J. Jos. Thompson, Butler, and Johnston, McCall & Johnston, Mobile, for appellant.

There is no claim that the defendant was entitled to an affirmative instruction or that the trial court erred in not granting a new trial on the ground that the verdict was

not sustained by the evidence. In the absence of such contentions we think a brief summary of the evidence will suffice for the purposes of this opinion.

Irma Lee McPhearson's death was caused by a bullet which was shot from a rifle owned by the defendant. The shooting occurred on Thursday morning, January 29, 1959, at a farm owned by the McPhearson family, which is usually referred to as the Tom Everett place. It is located in rural Choctaw County several miles from the town of Silas, where the deceased and the defendant maintained their home.

The defendant is a member of a family with considerable business interests, including farming and timber operations.

The defendant's version of the shooting and the events immediately preceding it are summarized:

On the morning of the shooting he went to the woods soon after he arose. Within a short time he returned to his home where he picked up his wife. She was emotionally upset, so rather than go to Butler, the county seat, where they were to implement their plans for a divorce, he drove to the Tom Everett place for the purpose of getting some information needed in connection with a tree planting project. On the way to that place the defendant says that he and his wife discussed their divorce plans and that she was mad because he insisted on having custody of the children.

When they arrived at the Tom Everett place the defendant got out of the automobile and walked over some of the land. Mrs. McPhearson remained in the automobile. When the defendant returned he asked his wife to go walking with him. She made no effort to get out of the automobile so the defendant turned and walked away. He had proceeded down a path for a short distance before he heard his wife get out of the automobile and begin to follow him down the path. As she was walking down the path she accused the defendant of entertaining the opinion that he was a "big shot." She told him

she was not going to let him have the children. As he turned towards his wife he saw that "she had the gun on me." He says he grabbed "the gun," which was a 30-30 Winchester rifle.

The defendant's testimony as to what occurred after he grabbed the rifle is shown by the following questions and answers:

"Q. Then what happened? A. We scuffled over the gun and I tried to get it away from her and I was having a good bit of trouble getting it away from her because she kept squatting down and doubling up over the gun and I couldn't get it away from her so quick or easy as I had once before, but I finally managed to push her and snatch the gun out of her hand, and that is when the gun went off.

"Q. Step down here and show, explain just what happened. Now I believe you said she pointed the gun at you? A. Yes, sir. I was walking from her, like this, and I turned around.

"Q. When you turned around, what did you see? A. The gun, and she walked up a few steps more and I grabbed it.

"Q. How did she have the gun, if you remember? A. Approximately like you have it.

"Q. What did you do then? A. I grabbed the gun.

"Q. Show the jury what you did. A. You mean like I tried to take it away from her?

"Q. Yes. A. I grabbed the barrel of the gun and turned it around and she squatted over it, and I jerked several times and finally pushed her, and it went off like that.

"Q. She was in that position when it went off? A. Yes, sir.

"Q. You tell the jury when you finally put your hand on her shoulder and jerked the gun that she was in this position when it went off? A. I jerked it two or three times and she·

would turn in front of me and facing the gun, and I saw I wasn't going to jerk it out that way, she kept squatting down, so I pushed her shoulder and jerked the gun back and it made her go that way. I pushed on her left shoulder.

"Q. When you pushed her did she fall away from you? A. Yes, sir, in fact, I stepped back.

"Q. Where was the rifle with relation to your face or body about the time it went off? A. Approximately in this position. I pushed and snatched the gun.

"Q. When you pushed her she fell away from you and you got the gun away from her? A. Yes, sir, we were both pulling on the gun. She was pulling on the gun and I pushed her."

The defendant says that after the rifle discharged and he saw that his wife was injured he picked her up and then concluded that she was dead. He became frightened. He placed her back on the ground and left her body and the rifle near the place of the shooting. He says that he went back to Silas for the purpose of informing his mother of what had occurred and then to Butler to inform his brother. His mother, according to the defendant, was not at home and his brother was busy.

As going to show that the shooting was not accidental, the State showed that on Friday morning, January 30th, the day after the shooting, the defendant returned to the Tom Everett place and after placing his wife's body in an old well he covered it with twelve feet of dirt which he scraped into the well with a bulldozer which he had brought that day to the place of the shooting from a point a number of miles away and did not advise his mother and brother or the authorities of his wife's death until Monday evening, February 2, 1959.

The State sought to show that the defendant killed his wife because of his in-fatuation for another woman, one Mary Robertson.

■ It was not reversible error for the trial court to refuse to permit defense witness J. S. Dearmon to answer the question, "It was not an uncommon thing for him [defendant] to carry his gun or rifle in his car or jeep going into the woods, * * *." This witness was permitted to state that on several occasions he had seen a gun or rifle in defendant's car and jeep.

■ Reversible error does not appear in the action of the court in sustaining the State's objection to the following question asked defense witness Dearmon by the defendant, "I will ask you if knowing that reputation for truth and veracity, would you believe him [defendant] on his oath?" As to this ruling, it is sufficient to observe that at the time this question was asked the defendant was not entitled to offer evidence of his reputation for truth and veracity. He had not been, or attempted to be, impeached as a witness by the State, either by the introduction of evidence of bad character on his part or of statements made by him out of court contradictory of his testimony on the trial, for he had not yet appeared as a witness. Funderberg v. State, 100 Ala. 36, 14 So. 877; Baugh v. State, 218 Ala. 87, 117 So. 426; Lassiter v. State, 35 Ala.App. 323, 47 So.2d 230.

■ It was not reversible error for the trial court to refuse to permit defendant's mother to answer a leading question as to whether she had arranged or planned to plant trees on the Tom Everett place. She was permitted to testify later as to the steps which had been taken in that connection.

The State introduced, without objection, three letters to which the name of the defendant was signed. They were dated February 2, 1959, and were addressed to business establishments where the defendant had maintained charge accounts. In the letters the addressees were advised that the charge accounts of the defendant were not

to be used in the future by anyone other than himself; that he would not be responsible "for any debts or obligations of anyone other than myself." The letters had been typed by the defendant's mother either at the request of the defendant or of his brother, a lawyer. After stating, in effect, that she might have signed the defendant's name to the letters, it was not reversible error for the State to be permitted to show that she did not have "a power of attorney" to sign the defendant's name. It was later established that the signature on the letters was that of the defendant. These letters were written, apparently, before the defendant advised his mother and brother of his wife's death. They were acting on the representation of the defendant that his wife was away from home on a visit and that they had agreed on a divorce.

█ The State Toxicologist testified concerning his qualifications and experience in performing autopsies and conducting ballistic examinations. He also testified that he performed an autopsy on the body of Irma Lee McPhearson. After so testifying, the Toxicologist was permitted, over the objection of defendant, to express his opinion, based on his examination of the body of the deceased and the wounds thereon, as to the position of the deceased at the time she was shot. Such opinion testimony was not admissible under the rule long established in this state. Crawford v. State, 262 Ala. 191, 78 So.2d 291, and cases cited. The reason for the rule which forbids such testimony is that having been given the description and characteristics of the wounds the jury is equally as competent as the witness to judge and decide the location and position of the participants. But subsequent to the introduction of the foregoing evidence, the defendant made the same proof through and by the testimony of his own expert witness, Dr. Parker, who examined the body of deceased and witnessed the autopsy performed by the State Toxicologist. This testimony of Dr. Parker rendered harmless the error committed in regard to the testimony of the Toxicologist as to the position of the deceased at the time of the shooting. Hamlett v. State, 19 Ala.App. 218, 96 So. 371.

█ The Toxicologist was shown a piece of metal. He stated that he removed it from the body of deceased and that it was a part of a bullet. It was not reversible error for the court to permit him to testify that the metal shown him "is a part of a bullet which was sufficient to cause death." Collins v. State, 250 Ala. 58, 33 So.2d 18.

There was no error in permitting the Toxicologist, an expert in ballistics, to testify that the piece of the bullet which was removed from the body of the deceased was a "Peters interbelted soft-point or soft-nose 30-30 caliber rifle cartridge." See Smith v. State, 182 Ala. 38, 62 So. 184.

█ No error resulted from the court's ruling in permitting the Toxicologist to express an opinion based on tests which he had made with the rifle, that if the "gun had been within twelve inches there would have been some burning of the tissue of the fabric of the dress." Washington v. State, 269 Ala. 146, 112 So.2d 179; Alexander v. State, 37 Ala.App. 533, 71 So.2d 520. See Straughn v. State, 270 Ala. 229, 121 So.2d 883; Nichols v. State, 267 Ala. 217, 100 So. 2d 750; Vernon v. State, 239 Ala. 593, 196 So. 96.

█ Sheriff Littlepage, as a witness for the State, testified as to a statement made by the defendant on Monday evening, February 2, 1959, the day on which the defendant first advised his family and the authorities of the death of his wife. Among other things, the Sheriff testified that the defendant told him on that occasion that on the morning of the shooting he "caught" his wife at a motel in Citronelle with a doctor; that from Citronelle they drove to the Tom Everett place where his wife was shot in a scuffle over the rifle when he tried to take it away from her.

On cross-examination of the Sheriff the defendant sought to show that on the following day he told the Sheriff, among other things, that he might have been confused

in his statement to the Sheriff on the previous evening as to the date on which he "caught" his wife at the motel. The purpose of this offered testimony is shown by the following statement made by counsel for the defendant:

"We offer it on the theory that it is an explanation and a further conversation with regard to the same matters he talked about the night before and an extension and continuation of the same conversation although there had been an interruption of several hours between this conversation on Tuesday morning and the night before. It was a continuation of the same subject matter and the same discussion the state has brought out and an extension of the same conversation that is testified to about here, and we think we have a right to show that statement * * *."

The trial court sustained the State's objection on the ground that the statement sought to be shown was self-serving. The defendant does not claim on this appeal that the statement was not self-serving. It is insisted that it was admissible because the defendant had interposed a plea of not guilty by reason of insanity and under that plea every act throughout the defendant's life was relevant.

But conceding without deciding that the statement would have been admissible on that theory, we cannot put the trial court in error for not admitting it when it was expressly stated by defendant's counsel that it was offered on an entirely different theory, which was not sustainable.

The trial court permitted the State, over proper objection by the defendant, to show by State's witness Louise McLaughlin that it was the gossip in the community that the defendant and Mary Robertson "were going together." This was hearsay and should not have been permitted in evidence. Carnley v. State, 162 Ala. 94, 50 So. 362; Ramsey v. Smith, 138 Ala. 333, 35 So. 325; Shirey v. State, 21 Ala.App. 626, 111 So. 195; State v. Aswell et al., 193 N.C. 399, 137 S.E. 174. Motive is an inferential fact to be drawn by the jury from the evidence, and must be proved as a fact, not as hearsay. Bufford v. State, 23 Ala.App. 521, 128 So. 126.

We seldom review a criminal case where the prosecution has called upon the trial court to give written instructions on behalf of the State. But in this case the prosecution requested thirteen written instructions, eleven of which were given by the trial court. The appellant contends that three of the written charges given at the request of the prosecution on behalf of the State are bad and that the giving of each should work a reversal.

We do not entertain the view that the giving of either Charge 4 or Charge 7, which will be set out in the report of the case, requires a reversal. Charge 7 is in effect a statement which many trial courts make to juries just before giving to them the written instructions as requested by the parties. In our opinion, Charge 4 might well have been refused, but it deals only with the plea of insanity and so discloses on its face. We do not think it confused the jury as to the other defenses interposed. See Parke v. Dennard, 218 Ala. 209, 118 So. 396.

On the other hand, we see no escape from reversing the judgment of conviction because of the giving of written Charge 2 at the request of the State. That charge reads:

"There is no rule of law requiring you, gentlemen of the jury, to give equal credence to every part of the *confessions* made by defendant and introduced in evidence before you, unless it is clearly disproved. All of the *confessions* must be weighed in the light of the surrounding circumstances, the motives which may have induced it, and its consistency with the other evidence; and you, gentlemen, without capriciously accepting or rejecting any portion, should credit such parts as you find reason for believing, and reject that

part which you find reason for disbelieving." (Emphasis supplied.)

No confession from the defendant was introduced in evidence. The defendant at all times has professed his innocence. His testimony, as well as the statements made by him which were introduced by the State, show that he claimed the shooting was an accident.

The admissibility of confessions and inculpatory admissions are generally determined under the same principles. But there is a broad distinction between admissions of inculpatory facts and confessions of guilt. When a person only admits certain facts from which the jury may or may not infer guilt, it is no confession. We may use the word confession for admission, but to sum up mere inculpatory admissions and designate them a confession implies they amount to a confession of guilt.

As to the facts of this case Charge 2 is abstract. We have said that it is not reversible error for the court to refuse an abstract charge, nor will the giving of an abstract charge which asserts a correct legal proposition operate a reversal unless it appears that on account of the circumstances of the case and the character of the charge given it was calculated to prejudice. Dennis v. State, 112 Ala. 64, 20 So. 925.

We are not prepared to say in the case at bar that this charge was not prejudicial to the defendant. The jury may have inferred that what was said by the defendant was a confession on his part.

In Shelton v. State, 144 Ala. 106, 42 So. 30, we reversed because of a similar statement included in the court's oral charge where no confession of defendant was introduced at his trial. We observed that a reversal was required although the charge was abstract. Unless the Shelton Case is to be overruled or ignored, we cannot affirm this case.

As we have heretofore mentioned, this is a voluminous record. We have not under-

taken in this opinion to discuss all of the rulings made by the trial court in connection with the admission and exclusion of evidence, nor have we treated each of the many charges given at the request of the State or the charges refused the defendant. To do so would but further lengthen this opinion.

Because of the giving of the State's written Charge 2, we feel constrained to reverse the judgment of conviction.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.