# Wise *v.* The State.

## *Murder.*

(Decided June 30, 1914.   66 South. 128.)

1. *Indictment and Information; Motion to Quash; Time.*—A motion to quash an indictment not made until after defendant had been arraigned and had pleaded to the merits, was addressed to the discretion of the trial court, and its action in overruling the same will not be reviewed on appeal; the motion being grounded on the fact that an attorney employed to assist in the prosecution made improper statements to the grand jury.

2. *Appeal and Error; Review; Matters Not Properly Shown.*—Where the rulings of the trial court on the motion to quash an indictment is not shown by a judgment entry set out in the record, but only by recitals contained in the bill of exceptions; it cannot be reviewed on appeal.

3. *Same; Harmless Error; Evidence.*—Where prejudicial testimony is erroneously admitted, it is not cured by the fact that defendant testified in detail as to the matter objected to for the purpose of counteracting the effect of such testimony, especially where his account of the occurrence differed from that made by the state's witness.

4. *Same.*—The improper admission of evidence is cured by subsequently excluding such evidence.

5. *Homicide; Evidence; Motive.*—Where the prosecution was for murder of a married woman, the theory of the state being that the motive for the crime was the jealousy of defendant over the attentions of P. to deceased, evidence of the difficulty between defendant and said person while they were together at the home of deceased during the absence of her husband was admissible to show motive for the killing of deceased about two hours thereafterward, but the details of such difficulty were not admissible.

6. *Same.*—Evidence as to the extent of the punishment inflicted by defendant on such person, and the language used by defendant while beating him, and that deceased saw the conflict from her window,

[Wise v. The State.]

was not a part of the res gestæ of the killing, and was not admissible to establish a motive.

7. *Same.*—Where the age of deceased was a material issue in a prosecution for homicide, the testimony of a neighbor who knew her and had had an opportunity to judge of her age that deceased was about twenty-five or thirty years of age, that she was comparatively young, was properly admitted.

8. *Evidence; Admissions; Voluntary Character.*—The admissions or voluntary statements of a defendant while under arrest, and in custody, to witnesses, or in habeas corpus proceedings, or on preliminary trial, and while under arrest or in custody must be shown to have been voluntarily made before they become admissible on his subsequent trial.

9. *Same; Expert and Opinion.*—The mere fact that witness is a physician does not establish the fact of his competency to testify as to how close the gun was to deceased when the shot causing death was fired.

10. *Same.*—A witness whose experience is limited to modern arms used in warfare is not competent to testify as an expert as to the recoil of a short, single-barreled shotgun.

11. *Same; Opinion; Basis.*—Testimony of an expert as to how far a gun pressed against the body will recoil on a discharge is not admissible where there was no evidence that the gun was in fact pressed against deceased's body; the evidence being that the muzzle was found clasped in deceased's hand.

12. *Witnesses; Competency.*—A child about ten years of age in the third grade at school was competent to testify, he having stated that the Bad Man will get boys if they tell stories; the people will send them off if they tell stories, I know it is wrong to tell stories.

13. *Same; Impeachment.*—It was proper on cross-examination to show that defendant's witness had endeavored to stop the investigation into the killing as showing interest or bias.

14. *Charge of Court; Stating No Proposition of Law.*—A charge asserting that there is no positive evidence that defendant fired the shot that killed deceased, was properly refused as stating no proposition of law, and as being invasive of the province of the jury.

15. *Same; Argumentative.*—Charges asserting that unless the jury are so convinced from the evidence that they would venture to act thereon in matters of the highest concern and importance to their own interests, etc., are properly refused as argumentative.

16. *Same; Covered by Those Given.*—It is not error to reversal to refuse correct charges which are substantially covered by written charges given.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Will Wise was convicted of murder in the second degree, and he appeals.    Reversed and remanded.

The witness Brunson testified that as mayor he held an inquest that night, and that the defendant was present and sworn and testified at the inquest. The state then asked the following questions:

"State to the jury what he said, if anything, about being down at Mrs. Griffin's at all that night [Mrs. Griffin being the person charged to have been killed] "

Over the objection of defendant, the witness was permitted to state:

"He first said that he had not been there; then he said he went to the edge of the yard and asked Len's wife if Len was there, and that she said no; Len was uptown."

He was then asked the following question: "Did he say anything there about his having had a fight there with Hub Patrick?" Objection was overruled to the question and he was permitted to state: "He didn't mention it." The witness, continuing, stated that he heard defendant testify under habeas corpus proceedings and also at the preliminary trial, and he was asked if at that time defendant did not testify that he was at Mrs. Griffin's house the night she was killed, and that he was there at the time that Hub Patrick said he was there, and that he had had a fight with Hub Patrick. This sufficiently illustrates the questions to the witness Davis and Brunson, except that the witness Davis seems to have been a police officer and had defendant in charge.

The witness Clayton Griffin testified that he would soon be 10 years old, did not go to school every day, but had been to school and was in the third grade; "that the bad man will get boys if they tell stories; that the people will send them off if they tell stories; that I know it is wrong to tell stories."

Dr. W. F. Matheny was examined as a witness for defendant, and was asked the following question, to which objection by the state was sustained:

"Doctor, from an examination of the wound and the outer garments through which the load passed, how close, in your judgment, was the muzzle of the gun that fired that shot to the body of deceased at the time of the shot?"

He was also asked:

"Doctor, in your opinion, is it not true that the fact that the clothing was only powder-stained and not burned—does not that in your judgment indicate that the gun at the time it was fired was right up against the body, or very near the body of deceased?"

The witness stated that he hunted very little, and had not had much experience with firearms of that character.

Johnson, being sworn for the defense, testified as to the position of the body, and of the gun relative to the body, and was asked the same questions practically relative to powder burns as had been asked the witness Matheny.

The following charges were refused to defendant:

(13) I charge you that in this case there is no positive evidence or testimony that defendant fired the shot that killed deceased, Drusy Griffin.

(28) I charge you that before you can convict defendant each of you must be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt, but that it is wholly inconsistent with every other rational conclusion, and unless each of you are so convinced by the evidence of defendant's guilt that you would each venture to act upon that decision in matters of the highest concern and importance to your own interest, then you must find defendant not guilty.

(Y) The court charges the jury that if they believe that the evidence in this case develops two reasonable theories, one tending to the guilt of defendant, and the

other to his innocence, it is the duty of the jury to adopt the theory in favor of defendant and acquit him.

Given charge S is as follows:

If, from the consideration of all the evidence in this case, there is created in the minds of the jury two reasonable theories as to the death of Mrs. Griffin one theory against defendant, and the other theory in his favor, then it is the duty of the jury to accept the theory in favor of defendant and acquit him.

C. D. CARMICHAEL, J. A. CARNLEY, and B. G. FARMER, for appellant. The grounds of the motion to quash the indictment were sufficient.—*Blevins v. State,* 68 Ala. 95. The motion did not come too late to call into exercise the sound discretion of the trial court.—*Smith v. State,* 142 Ala. 14. The age of the deceased was immaterial, and the court improperly permitted the character of evidence introduced to establish her age.—*Ham v. State,* 156 Ala. 567; *Winter v. State,* 123 Ala. 1; *Marshall's Case,* 49 Ala. 21. The court erred in permitting the details of the difficulty between Patrick and defendant to be shown.—*Fonville v. State,* 91 Ala. 39; *Jones v. State,* 76 Ala. 9; *McAnally v. State,* 74 Ala. 9. Admissions of a defendant to be admissible must be shown to be voluntary.—*Shelton v. State,* 144 Ala. 105; *Wright v. State,* 58 South. 68; *Wilson v. State,* 110 Ala. 1. The court erred in admitting the little boy to testify.—*Carter v. State,* 63 Ala. 52; *Jones v. State,* 145 Ala. 51. A physician is not prima facie qualified to testify as to the distance from the body of the weapon producing the injury.—*Phillips v. State,* 170 Ala. 5; *Timothy v. State,* 130 Ala. 68, *Tesney v. State,* 77 Ala. 33. The defendant should have been permitted to show that Johnson had made contradictory statements.—*Wright v. State,* 58 South. 70. The soldier who had had experience in war

[Wise v. The State.]

with guns was competent to testify as to the recoil of the gun when pressed against a body and fired.—*Clemmons v. State,* 167 Ala. 20; *Page v. State,* 61 Ala. 16. Charge 13 should have been given, as should charge 28. —*Pickens v. State,* 115 Ala. 42; *Brown v. State,* 118 Ala. 111.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. The action of the court on the motion to quash the indictment is shown only by the bill of exceptions, and cannot be reviewed.—*Garrett v. State,* 97 Ala. 18. The motion to quash came too late, and at most was addressed to the discretion of the court.—*Hubbard v. State,* 102 Ala. 16. Under the state's theory, the age of deceased was material, and the court did not err in the manner in which it was shown.—*Winter v. State,* 123 Ala. 1. The child was shown to be competent.—*McGuff v. State,* 88 Ala. 147; *Williams v. State,* 109 Ala. 64. Counsel discuss the other assignments of error relative to evidence, and the refused charges, but without further citation of authority.

PELHAM, J.—The appellant was indicted for murder in the first degree, tried, and convicted of murder in the second degree.

In the trial court the defendant made a motion, that it strenuously insisted upon in briefs filed here, to quash the indictment, based on the misconduct of an attorney, employed to assist in the prosecution, going before the grand jury while it was engaged in deliberating on the case. It is alleged as grounds for the motion that the attorney made improper statements to the grand jury that influenced or induced the grand jury to return the indictment against the defendant. This motion is shown

not to have been made until after the defendant had been arraigned and pleaded to the merits of the indictment, and was within the discretion of the trial court and not reviewable here.—*Hubbard v. State,* 72 Ala. 164; *Davis v. State,* 131 Ala. 10, 31 South. 569; *Thayer v. State,* 138 Ala. 39, 35 South. 406; *Rogers v. State,* 166 Ala. 10, 52 South. 33.

The question is not before this court for the additional reason that the court's ruling on the motion is not shown by a judgment entry set out in the record, but only by the recitals contained in the bill of exceptions. —*Garrett v. State,* 97 Ala. 18, 14 South. 327; *Conway v. Clark,* 171 Ala. 391, 55 South. 117. The transcript shows nearly 100 exceptions to the rulings of the trial court on the admission and rejection of evidence, and 84 assignments of error have been written upon the transcript by appellant's counsel, but, after reading the voluminous record and briefs, and giving careful attention to the matters presented, we do not deem it beneficial, or that it would serve any proper purpose to enter into a discussion of each of these matters in detail.

The deceased was a married woman who lived at home with her husband. It seems to be the theory of the state, to be gathered from the evidence, that it relied upon showing, as a motive for the killing, that the defendant was angered, or made jealous, by the attentions of one Hub Patrick to the deceased. Patrick, as a witness for the state, testified to a difficulty he had with the defendant on the night of, but some two hours before, the killing, that took place in the yard of the house of the deceased, near a window from which the deceased heard and saw part of the altercation, at a time when her husband was not at home—a fact which, it seems, was known to both men before going to the home of the deceased. After proving the fact that the defendant

had a difficulty with Patrick at this time, under these circumstances, the state was allowed, against numerous objections made and exceptions reserved by the defendant, to go into the details of the difficulty, and show by Patrick that the defendant jerked him over and cursed him, calling him by vile names, and threatening to kill him; that the defendant choked him until he could not speak, and hit him three or four times in the face with his fist; that after the defendant jerked him over flat on his back he got astride of him and hit him; that the defendant informed the deceased, who had come to the window of her house, that he intended to kill him (Patrick), using oaths in connection with the threat; that upon the deceased's telling them to leave, the defendant got off of him, and that he went under the house to get away from the defendant. The evidence in behalf of the state showed that the defendant left the premises of the deceased after this occurrence, and that the killing did not take place until some two hours afterwards, when, it is the contention of the state, he had returned to the home of the deceased. It was the theory of the defense that the defendant was a friend of the husband of the deceased, and that after the occurrence with Patrick at the home of deceased he left, and that the deceased, in an hour or two thereafter, committed suicide.

The difficulty between the defendant and Patrick cannot be said, under the circumstances shown, to constitute a part of the res gestæ of the act of homicide; it did not constitute one continuous transaction with it, nor was it substantially contemporaneous, so as to make the details of this difficulty with a third party admissible as illustrating the character of the main fact, or crime charged.—*State v. Stallings,* 142 Ala. 112, 38 South. 261. The fact, general nature, and occasion of a former difficulty between the defendant and Patrick

was, of course, admissible to support the theory of the
state in tending to show a motive actuating the defend-
ant in the commission of the crime charged against him,
and to show that the defendant entertained animus or
ill will against the deceased, growing out of, or based
on, feelings of jealousy. But the *details* of the encounter
would not furnish a reason or show a motive for the
homicide, or tend to explain or illustrate its character—
would not have any legitimate tendency to establish the
theory of the state, and is so far separated from the act
charged, as to time, circumstance, and person, as to
constitute no part of the res gestæ of that act.—*Garrett
v. State,* 76 Ala. 18; *Still v. State,* 91 Ala. 10, 8 South.
669, 24 Am. St. Rep. 853; *Jones v. State,* 76 Ala. 9; *Quin
v. State,* 1 Ala. App. 116, 55 South. 450.

It is insisted by the state's counsel in brief that, as
the defendant subsequently testified about this difficul-
ty and went into the particulars, the error in admitting
the details of the difficulty when testified to by the state's
witness Patrick, against the defendant's objection, was
cured. This argument is fallacious in more than one
aspect. Non constat the defendant would not have testi-
fied as to the details of this difficulty if he had not been
forced to do so because of the testimony of Patrick as to
these matters previously admitted against his objection;
and then, too, the details of the difficulty as subsequently
narrated by the defendant when testifying as a witness
in his own behalf differed with respect to the detailed
particulars of the difficulty as testified to by the witness
Patrick, and it may be that the jury believed the details
as narrated by the witness Patrick, and did not believe
the defendant's testimony on this point, and, adopting
"falsus in uno, falsus in omnibus," as applied to the de-
fendant's testimony, discredited the defendant's testi-
mony as to material and vital matters testified to by

him, in which he denied having any connection with the commission of the offense charged against him, and solely because of this variance between his testimony and the testimony of the witness Patrick on the illegally admitted evidence. The evidence relied upon for a conviction, aside from the testimony of a nine-year-old child of the deceased, that, according to the testimony of several of the defendant's witnesses, had made several contradictory statements about the matter, was entirely circumstantial in its nature, and we are unable to say, under such a state of conflicting evidence as is shown by this record, that the defendant was not prejudiced by the admission of the illegal evidence relating to the details of a difficulty with a third party, as testified to by that party, against the defendant's objections and duly reserved exceptions to the court's rulings in admitting such matters in evidence.

It was proper to permit the state's witness Mrs. Willis to testify that the deceased, Mrs. Griffin, was "about 25 or 30 years old—about there. She was comparatively young." Mrs. Willis was shown to be a neighbor, and knew and had opportunity of observing the deceased and forming a comparative judgment with respect to her age. It was the theory of the state that because of illicit sexual relations existing between the deceased and the defendant, or sought by the latter, a motive for the crime charged against the defendant was to be found, and it was, for this reason, competent to show that the deceased was within that age limit when she would be in possession of charms and capabilities making her physically attractive in such a way to the defendant. The cases cited by the defendant on this proposition are not in point. When the exact age of a person is in issue, it should not be testified to by a witness except that such witness be shown to be fully qualified to state facts, or

6 CA

to give an opinion and state his judgment based on expert knowledge or long acquaintance with the person, but we doubt not the admissibility of evidence of the judgment of a witness to be taken into consideration who knows and has observed a person, as to the person's apparent or relative age, whether old or young, or as appearing to be "about 25 or 30 years of age," when the relative, comparative, or generally apparent age of a per-son is a proper matter to be proven under the issues of the case, just as it would be proper for the court or jury to inspect the person for the same purpose. However, the question will probably not arise upon another trial, as the safer practice would be to make this proof by a witness of whose competency to testify to this matter there would be less question, and whose evidence would be more satisfactory and convincing.

If the statements made by the defendant to the wit-nesses Tom David and J. C. Brunson are to be regarded as inculpatory, nevertheless they were not rendered in-admissible because of the fact that the defendant was under arrest at the time (*Jackson v. State,* 167 Ala. 42, 49, 52 South. 835), but it should have been made to ap-pear that the statements were voluntarily made. And this is also true with respect to proving admissions or inculpatory statements made by the defendant on his preliminary trial and habeas corpus proceedings, when in custody, under arrest charged with the crime. It cannot be said to appear circumstantially that admis-sions made under such circumstances were voluntary. They are prima facie inadmissible, and before receiving them the court should carefully inquire into whether or not they were voluntarily made.—*Wright v. State,* 3 Ala. App. 24, 32, 58 South. 68, and authorities there cited.

The statements made by the defendant at the coroner's inquest, if improperly admitted, were afterwards excluded by the court, and the error, if any, cured.

The child Clayton Griffin (but little under 10 years of age) on his voir dire examination was shown to have sufficient appreciation as to future rewards and punishments pertaining to false swearing to make him competent to testify as a witness. The examination did not divulge an intellectual or moral deficiency that would disqualify him.—*McGuff v. State,* 88 Ala. 147, 7 South. 35, 16 Am. St. Rep. 25; *Williams v. State,* 109 Ala. 64, 19 South. 530.

The mere fact that the witness Matheny was a physician did not necessarily, of itself, without more, and when it was not made to appear that he had had experience, show him to be qualified as an expert to give his opinion on how close the gun was to the deceased when the shot was fired, and the court committed no error in refusing to admit this evidence as competent expert opinion testimony. A witness, to testify as an expert, must first be shown to be such.—6 Mayf. Dig. 344, * 180.

It was proper for the state to show, on cross-examination by the defendant's witness Dr. Johnson, that he had endeavored to stop the investigation into the killing, for the purpose of showing his interest, prejudice, or bias as a witness.

We hardly think the witness J. F. Johnson was shown to have sufficient knowledge on the subject to answer as an expert the hpyothetical questions that he was permitted to answer against the objection of the defendant. His experience and observation seemed principally limited to the modern arms used in warfare, and he was shown to have had but little knowledge, if any, of a weapon like the one with which the deceased was killed —a short, single-barreled shotgun. His opinion must

necessarily have been based upon a species of knowledge variant from the facts hypothesized, and consequently variant from that knowledge which the law requires as a qualification of one who gives his opinion as an expert.

It was also improper to submit to the jury the opinion of this witness as an expert as to the effect, extent, and force of the rebound of a gun when the muzzle is placed against an object at the time the gun is fired. It was not shown or insisted, nor were there circumstances proven from which it could be reasonably and fairly inferred, that the muzzle of the gun was placed *against* any object when it was fired, so as to cause a rebound from the object. It was the defendant's theory that the deceased committed suicide by placing the muzzle of the gun in close proximity to her person and springing the trigger with a stick of wood that was found close by her dead body, but there was no insistence or contention, and no evidence before the court that would fairly support the inference, that the muzzle was placed *against* the body. The muzzle of the gun having been found clasped in the hand of the deceased, it was prejudicial to the defendant to introduce expert opinion testimony of this nature based on an abstract proposition, not an issue in the case, not supported by the testimony, and having a natural tendency to produce the impression on the minds of the jury that the rebound of the gun when fired would have been sufficient, if fired by deceased in suicidal act, to break her grasp upon the weapon. The state cannot thus be permitted to set up a theory of defense for the defendant against his objection, make it an issue without evidence to support it, and then demolish the straw theory and foreign issue, thus injected to the prejudice of the defendant, by expert opinion testimony.

· Charge No. 13, refused to the defendant, was well refused in the light of the testimony of the witness Clayton Griffin, and, besides, it states no proposition of law, and the court was under no duty to give it.—*Lewis v. State,* 178 Ala. 26, 59 South. 577.

Charge 28 has been many times, subsequent to the cases cited by defendant's counsel in brief, condemned as argumentative and an improper instruction to give to a jury in a homicide case.—*Leonard v. State,* 150 Ala. 89, 43 South. 214.

As applied to the facts of the case, refused charge Y is covered by given charge S; but we are not to be understood as approving the charge.—See *Compton v. State,* 110 Ala. 24, 20 South. 119, where a charge very similar was condemned.

The correct propositions contained in other refused instructions are fully covered by the charges given at the defendant's request.

We have discussed all the matters insisted upon by counsel in briefs as showing error. An examination of the whole record shows no other reversible error, but the judgment must be reversed for those errors committed on the trial of the case that we have pointed out.

Reversed and remanded.