174 So. 298

## LAMBERT v. STATE.
### 1 Div. 947.

Supreme Court of Alabama.
May 13, 1937.

156

C. L. Hybart, of Monroeville, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

THOMAS, Justice.

There is no question presented as to the indictment, arraignment, venire, or of the entering upon the trial.

■ The record is sufficient and indicates a procedure within the law. The verdict of guilty of murder in the first degree, as charged in the indictment, and the fixing of the punishment at life imprisonment "was pursuant thereto and in due form." Ruff v. State, 229 Ala. 649, 159 So. 94. The judgment was duly entered thereon.

■■ There were many given charges, instructing as to reasonable doubt and presumptions of innocence. Charge 16 requested by the defendant was duly refused. It was argumentative and sufficiently covered by the oral instructions of the court and by defendant's written charges. Moreover, the charge uses the words "with the theory that the defendant is innocent." The charge was well refused for the failure to sufficiently hypothesize a reasonable theory. Ledlow v. State, 221 Ala. 511, 513, 129 So. 282; Goocher v. State, 227 Ala. 337, 343, 149 So. 830; Rayburn's Jury Charges, 296 et seq.

The full measure of proof that the law exacts may not be rested upon a false or superficial theory of a defendant's innocence. Pitman v. State, 148 Ala. 612, 42 So. 993; Ledlow v. State, supra.

■ The witness Travis had described the physical condition in which he found the deceased at the time and place of his convulsions and immediate death: described the first convulsion deceased had, and said he "saw two convulsions," something like five or six minutes between them. Witness asked by the state's counsel to "describe to the jury the second convulsion that he had," answered that "Mr. Luker stepped around and touched him on the arm like that and he had another one the same way." Defendant's counsel moved to exclude the answer— "that he had another one the same way"— as a conclusion of the witness. To this the court inquired: "Do you mean by that, that he evidenced the same bodily movements as you just described in the first convulsion?" The witness answered this question in the affirmative, whereupon the court overruled the motion and the defendant excepted. The record states "that this happened just as Mr. Luker touched him." In this ruling there was no error. The witness proceeding further, described the physical condition of the deceased, viz., that he rared his head back and jerked his arms up to his breast; that he seemed to have his teeth gritted close together; that his eyes were set, his legs right straight out; adding, "That the two convulsions seemed to last 2, 3 or 4 minutes the best he could judge."

■ The state offered the photographs of the deceased made just before the time of his death and defendant objected to such action and reserved an exception thereto. The photographs were admissible. In this ruling there was no error. The cross-examination of the witness indicated a line of defense that death was the result of natural or accidental causes, other than that resulting from poison alleged to have been administered with whisky within a reasonable time before death.

The several admissions against interest were introduced in evidence after due

predicates were laid. Fincher v. State, 211 Ala. 388, 100 So. 657; Curry v. State, 203 Ala. 239, 82 So. 489; Stone v. State, 208 Ala. 50, 93 So. 706; Huffman v. State, 130 Ala. 89, 30 So. 394; Morton v. State, 206 Ala. 300, 89 So. 655; Elmore v. State, 223 Ala. 490, 137 So. 185.

■ It was proper to allow the witness Dr. D. D. Cole, after his qualification as an expert, to express an opinion upon the established facts as to the cause of decedent's death. The record relates the following, in the course of examination of this witness:

"Q. Now, Doctor, I will ask you this question. Assuming that a man who has had convulsions at intervals, three or more of them, each lasting from one to three minutes, followed by a partial relaxation of the muscles of the body, during the period of relaxation he is conscious, during the convulsions his head is drawn back, his teeth clinched, mouth drawn in a sardonic grin, eyes fixed, during the convulsion his body is arched and rigid and he complains of pains around the heart, the convulsions are brought on by sudden noise or touching of the body, no evidence or history of any bodily injury, he was never known to have had epilepsy or organic heart trouble, no history or evidence of any recent cut or wound on his body, the man dies during a last convulsion, what, in your professional opinion, caused his death? * * *

"Q. Answer the question, Doctor. A. Well, you have described a death by strychnine poisoning.

"Q. So in your medical opinion this would indicate a death by strychnine poisoning? A. It would."

And on cross-examination the witness testified further that a doctor could properly diagnose death by strychnine poisoning on a layman's testimony; that his (the doctor's) evidence was based strictly on the evidence of those who saw the patient, but that seeing what he did of the body after death, together with testimony of four laymen who saw the body before death, would enable a physician to arrive at a pretty fair conclusion of the cause of death; that a doctor would hardly be mistaken about death caused by strychnine poisoning; that there is a vast difference in symptoms of strychnine poisoning and Korea, because the latter gradually comes on accompanied by disturbances of the entire nervous mechanism and not by violent convulsions; that uremic convulsions are different from convulsions caused by strychnine poisoning, because there is no drawing of the entire muscular system, there is complete relaxation after convulsions and a state of perfect unconsciousness between the moments of the convulsions.

■ The court properly allowed in evidence Petersons & Haynes Text Book of Legal Medicine and Toxicology, embracing the subject of strychnine or nux vomica. The distinguishing symptoms of strychnine poisoning from that of other poisonings are period of fatality, treatment of poisoning by strychnine, postmortem appearance, and the several tests employed to determine whether or not the condition was induced by strychnine poisoning.

■ The court properly allowed in evidence the entire testimony of Dr. Nixon, the Toxicologist, given on the preliminary trial. The entire testimony, direct and cross-examination of Dr. Nixon, was read to the jury under agreement of counsel.

■ The defendant as a witness in his own behalf denied the questions of fact adduced by the state as to administering poison to deceased and denied procuring the insurance on the life of the latter made payable to the defendant. The defense was to the effect or predicated on the assumption that the insurance was not applied for by the defendant, but was procured by the deceased. Under such controverted facts, the handwritings of defendant and deceased and the family history of the latter, which was a part of the original application for insurance, were material evidence for determination as to the actor or respective actors in the premises.

The defendant as a witness in his own behalf was shown a letter which he acknowledged to have been theretofore written by him to his brother (containing irrelevant matter) and which presented inquiries of fact here pertinent. That letter was admitted in evidence without objection and was limited to the purpose of comparison of handwriting on the application for the insurance. Gen. Acts 1915, pp. 134, 135, sections 7705, 7707, Code of 1923; Patterson v. First Nat. Bank, 229 Ala. 406, 157 So. 446; Martin v. Davis, 224 Ala. 648, 141 So. 667. In Kirby v. Brooks, 215 Ala. 507, 111 So. 235, it was held that a witness must qualify

before testifying relative to an opinion as to genuineness of handwriting. In this case we merely have a document introduced in evidence from which the jury may form its own or its independent opinion as to the fact of genuineness. Section 7707, Code of 1923. To like effect was Brown v. Welch, 209 Ala. 518, 96 So. 610.

We have searched the record. Howerton v. State, 191 Ala. 13, 67 So. 979. It is free from reversible error. The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.