112 So.2d 179

Caliph WASHINGTON

v.

STATE of Alabama.

6 Div. 227.

Supreme Court of Alabama.

Feb. 12, 1959.

Rehearing Denied May 14, 1959.

David H. Hood, Jr., Bessemer, and Orzell Billingsley, Jr., K. C. Edwards, Birmingham, for appellant.

**152**

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

LAWSON, Justice.

Caliph Washington was tried for first degree murder in the Circuit Court of Jefferson County, Bessemer Division. He was convicted and sentenced to death. The case comes here under the automatic appeal statute. Act No. 249, Acts 1943, p. 217, approved June 24, 1943. See 1955 Cum. Pocket Part, Vol. 4, Code 1940, Title 15, § 382(1) et seq.

Appellant filed motions to quash the indictment and trial venire on the ground that his rights under the Fourteenth Amendment to the Constitution of the United States were violated in that persons of his race, the Negro race, duly qualified under the applicable state law to serve as members of the grand jury and of the petit jury, were systematically and intentionally excluded from the jury roll and the jury box from which the grand and petit juries were drawn.

In a long line of cases going back many years, the Supreme Court of the United States has held that a criminal defendant is denied the equal protection of the law guaranteed by the Fourteenth Amendment to the Constitution of the United States if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, and cases cited. Decisions of this court are to the same effect. Norris v. State, 229 Ala. 226, 156 So. 556; Millhouse v. State, 232 Ala. 567, 168 So. 665; Vaughn v. State, 235

Ala. 80, 177 So. 553; Vernon v. State, 245 Ala. 633, 18 So.2d 388. See Fikes v. State, 263 Ala. 89, 81 So.2d 303; Reeves v. State, 264 Ala. 476, 88 So.2d 561.

■ It seems to be settled that a motion to quash is the proper way to challenge an indictment and a trial venire on the ground of intentional racial discrimination. Vernon v. State, supra; Millhouse v. State, supra; Vaughn v. State, supra.

■ Sections 278 and 285, Title 15, and § 46, Title 30, Code 1940, have been held to be procedural statutes, designed to prevent quashing of indictments or venires for mere irregularities and to obviate the resulting delays in the administration of justice. Those statutes do not deny to one charged with a crime the right to present for a determination the question of whether the rights guaranteed by the Fourteenth Amendment to the Constitution of the United States have been violated. Vernon v. State, supra.

The State did not interpose any kind of pleading to the motions to quash, offer any evidence or raise any question as to the timeliness of the motions. The hearing on the motions proceeded as if they were timely filed and as if the State had taken issue thereon.

■ It has been said that the burden of proof is upon the defendant to establish the racial discrimination alleged in such motions. Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Tarrance v. State of Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572.

The Jury Board of Jefferson County is composed of three members whose duties are defined by the local act creating the Board. Act No. 333, Acts of Alabama, Regular Session 1953, Vol. 1, p. 387. Sections 11–18, inclusive, of that act will be set out in the report of the case.

No objection was interposed to the validity of any of the provisions of the 1953 local act, supra. See Franklin v. State of South Carolina, 218 U.S. 161, 30 S.Ct. 640, 54 L.Ed. 980.

It appears from the testimony of a member of the Jury Board who was placed on the stand by the defendant that the Jury Board on the last Tuesday of August, 1957, made a separate roll and refilled a separate jury box for the territorial division of Jefferson County commonly referred to as the Bessemer Cutoff, over which the Bessemer Division of the Circuit Court of Jefferson County has jurisdiction. Section 18, Local Act, supra. Approximately seven thousand cards bearing the names of jurors living within the Bessemer Cutoff were placed in the box. According to this witness, those names were selected in accordance with the provisions of the said local act, supra, and the names of colored jurors as well as white were placed in the box.

■ The grand jury which indicted this defendant had a Negro on it. The grand jury, composed of eighteen persons, was drawn by lot from a list of thirty-two persons who responded to subpoenas for grand jury duty from a list of fifty-two names duly drawn from the August, 1957, jury box by the trial judge. Four Negroes were among the thirty-two persons who appeared. There is no evidence as to the race of the twenty persons whose names were drawn but who did not appear.

In view of the evidence concerning the presence of Negroes on the jury list from which the grand jury was drawn and the presence of the Negro on the grand jury, we are of the opinion that the trial court did not err in overruling the motion to quash the indictment even if it be conceded that the defendant established the fact that few, if any, Negroes had served on juries in the Bessemer Cutoff drawn from prior jury boxes, and even though it be conceded that the evidence shows the male Negro population over twenty-one years of age within the said political subdivision to be equal to or in excess of the white male population of that age group. However, the evidence as

it relates to the population ratio is far from clear.

▮ The question before the trial court was whether the defendant made a prima facie showing of discrimination in the filling of the August, 1957, jury box. Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Fikes v. State, 263 Ala. 89, 81 So.2d 303, reversed by the Supreme Court of the United States on another ground. See Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246. There was no charge of any fraud or irregular practice in the method of drawing the cards from the jury box or in the making up of the jury list. There was no evidence offered to that effect. The fact, if it be a fact, that Negroes were excluded from prior jury rolls and boxes because of their race can only serve to shed light on the conduct of the members of the Jury Board in making up the jury box of August, 1957. But that fact, in our opinion, was not sufficient to make out a prima facie showing that Negroes had been systematically excluded from the jury box here involved from which the names of Negroes were drawn to serve on the grand jury which indicted the defendant. In our opinion, the facts in this case are clearly distinguishable from the facts held to constitute a prima facie showing of discrimination in the following cases. Neal v. State of Delaware, 103 U.S. 370, 26 L.Ed. 567; Norris v. State of Alabama, supra; Hale v. Commonwealth of Kentucky, 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050; Pierre v. State of Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L. Ed. 757; Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559; Patton v. State of Mississippi, 332 U.S. 463, 68 S. Ct. 184, 92 L.Ed. 76, 1 A.L.R.2d 1286; Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L. Ed. 77. As we understand the evidence in this case, there was no "vacuum" which the State was called upon to fill by moving in with sufficient evidence to dispel a prima facie case of discrimination. Avery v. State of Georgia, supra.

▮ We realize full well that we are dealing with a federal question and that on review by the Supreme Court of the United States that court can make an independent examination of the evidence to determine whether a federal right was denied the defendant. Our conclusion here has been reached only after a careful and studied consideration of the decisions of the Supreme Court of the United States on the question, and while we are of the opinion that the conclusion which we have reached is correct, we feel that the better practice would have been for the State to have presented evidence as was done in the case of Fikes v. State, 263 Ala. 89, 81 So.2d 303.

We hold that reversible error is not made to appear in connection with the action of the trial court in overruling the motion to quash the indictment.

No evidence was adduced in the hearing on the motions to quash concerning the composition of the petit jury or the list from which that jury was selected. For aught appearing there were many more Negroes on that jury than were drawn for possible grand jury duty. The defendant introduced no evidence tending to show the number of whites in the jury box or on the jury roll as compared to the number of Negroes. But in any event, we see no occasion to pass on the motion to quash the venire inasmuch as the case must be reversed for a reason hereafter stated and the defendant will be subject to trial before a different petit jury.

▮ We think it advisable to observe that since the burden is upon the defendant to prove his allegations concerning discrimination, he must be given an opportunity to produce relevant, legal evidence, if he can, which tends to prove racial discrimination. Millhouse v. State, 232 Ala. 567, 168 So. 665; State v. Perry, 248 N.C. 334, 103 S.E.2d 404.

In the early hours of the morning of Friday, July 12, 1957, James B. Clark, a police officer of the City of Lipscomb, while driving a police car gave chase to an automobile which finally came to a stop in Exeter Alley in the City of Bessemer. The automobile was driven by the defendant, Caliph Washington, a seventeen-year-old Negro boy. The police car was stopped immediately behind the automobile driven by the defendant. Shortly after the two motor vehicles came to a stop the police officer, Clark, received a fatal wound from a bullet fired from his own pistol.

On Sunday afternoon, July 14, 1957, the defendant was arrested by a Mississippi officer at Byhalia, Mississippi. He had the deceased's pistol in his possession. The defendant was later turned over to Lawton Grimes, Sr., a police officer of the City of Bessemer, who returned the defendant to Bessemer. Grimes testified on behalf of the State. According to Grimes, the defendant voluntarily confessed that he shot Clark with the latter's pistol while he, Washington, "was trying to get away from the police." In that oral confession, as related by Grimes, the defendant gave the following version of the shooting: "Whenever he [Clark] jammed me up in the alley there, had my car blocked off in the alley, in Exeter Alley, that I, when I started to get out of the car, he met me and he got me in the belt and walked around to the right hand side of the police car and when he reached down to unlock the car with the other, *I just whirled in under him and grabbed his pistol and then stepped back and shot him two or three times.*" (Emphasis supplied.)

There were several colored witnesses who testified in behalf of the State. Their testimony is to the effect that Washington was present at the time the shooting occurred, but none of them actually saw the shooting.

The State called a Negro soldier who was on the bus with defendant on the day of his arrest in Mississippi who testified to the effect that the defendant told him that he had killed a policeman in Alabama. Elijah Honeycutt, a Negro man, testified to the same effect.

The defendant testified in his own behalf. He gave an account of his whereabouts on the night of July 11 and the early hours of the morning of July 12, 1957. He stated that shortly before the shooting he was on his way to the place where he was to spend the night. He was driving his father's automobile within the City of Lipscomb at a speed of from twenty-five to thirty miles an hour when he was pursued by an automobile which was not sounding a siren or flashing any light, and from which two shots were fired in his direction. Thereafter he speeded up his automobile and the pursuit continued. He described the route which he and the driver of the pursuing automobile took prior to the stopping of the two motor vehicles in Exeter Alley. According to the defendant, when the light on the top of the police car began to flash he stopped his automobile in the alley. The deceased ordered the defendant out of the automobile and told him to "put your hands up." The defendant says he complied with that command. The deceased made inquiry concerning the defendant's possession of whisky. The defendant replied that he did not have any whisky in his possession, was not transporting whisky, but was merely on his way home. Thereupon the police officer started to strike the defendant with his pistol. The defendant caught the deceased's hands and a tussle ensued, during which the deceased's pistol was fired two or three times. The defendant says he never did get control of the pistol during the struggle or get his finger on the trigger. After the third shot was fired the police officer fell and the defendant ran, carrying the deceased's pistol with him after picking up several cartridges which had fallen on the ground.

▪ Reversible error is not made to appear in the ruling of the trial court permitting a pathologist whose qualifications were established to testify as to his findings concerning the condition of the body of a man identified to him as that of the de-

ceased, where the evidence later adduced showed without controversy that the body was that of the deceased.

■ The pathologist described the injuries he found on the body. The stomach had two holes in it which appeared to have been caused by the same object which penetrated the skin. The pancreas was cut in two and the main blood vessel from the heart, the aorta, was punctured. Only one bullet was found in the body of the deceased and it was removed from the spinal column. It was not error for the trial court to permit the witness to testify that the gunshot wounds which he described caused the death of James B. Clark. Lambert v. State, 234 Ala. 155, 174 So. 298; King v. State, 266 Ala. 232, 95 So.2d 816.

The pathologist described the path of the bullet after it entered the body but did not attempt to draw conclusions as to the relative positions of the parties when the shot was fired. See Crawford v. State, 262 Ala. 191, 78 So.2d 291.

■ Photographs of the dead body of James B. Clark were admitted without error. Maund v. State, 254 Ala. 452, 48 So. 2d 553; Smarr v. State, 260 Ala. 30, 68 So. 2d 6; Chappelle v. State, 267 Ala. 37, 99 So.2d 431.

■ The shirt worn by deceased, showing a bullet hole but no powder burns or smudges, was properly admitted in evidence as corroborative of the State's evidence. Morris v. State, 268 Ala. 60, 104 So.2d 810, and cases cited.

■ The bullet taken from the body of the deceased was properly identified and accounted for and was admitted without error. Payne v. State, 261 Ala. 397, 74 So. 2d 630; Grissett v. State, 241 Ala. 343, 2 So.2d 399; Vernon v. State, 239 Ala. 593, 196 So. 96; Moss v. State, 152 Ala. 30, 44 So. 598; Crawford v. State, 112 Ala. 1, 21 So. 214. The admission of the bullet, when considered with the evidence of Dr. C. J. Rehling, the State Toxicologist, was advantageous to the defendant. The bullet contained a flattened surface which Dr. Rehling stated in his opinion could not have been caused by contact with the flesh or bone of the deceased, and there was evidence to the effect that there was a dent in the police car after the pistol was fired which was not present before the shooting. In other words, this evidence was in some measure supportive of the theory of the defendant that he did not step back from the deceased and deliberately fire the pistol at him, but that the pistol was accidentally discharged during the tussle which ensued after the deceased raised his arm to strike the defendant.

■ It was not reversible error to admit expert evidence to the effect that the bullet was fired from the pistol which deceased had with him at the time of the shooting. Grissett v. State, supra; Collins v. State, 250 Ala. 58, 33 So.2d 18.

The pistol which was properly identified was also admitted in evidence without error. Higginbotham v. State, 262 Ala. 236, 78 So.2d 637; Payne v. State, 261 Ala. 397, 74 So.2d 630.

■ It was not reversible error to admit in evidence the bag in which the defendant was carrying the pistol at the time of his arrest.

■ No error resulted from the court's ruling in permitting Dr. Rehling, the State Toxicologist, an expert in ballistics, to express the opinion that the pistol was fired from a point more than twelve inches from the shirt worn by deceased, which was punctured by the bullet. This evidence was admitted after the witness had stated that he had an opinion based on his examination of the pistol and the fact that there were no powder burns or smudges on the shirt of the deceased. Alexander v. State, 37 Ala.App. 533, 71 So. 2d 520; People v. Smith, 25 Cal.App.2d 241, 77 P.2d 277. Cf. Wise v. State, 11 Ala. App. 72, 66 So. 128. Distance was a factor in determining whether or not the pistol

was fired with intent to kill. See Phillips v. State, 170 Ala. 5, 54 So. 111.

■ We think the predicate as laid by the State was sufficient to show prima facie that the statements of the defendant in the nature of confessions were voluntarily made. There is nothing in the record to indicate that under the circumstances prevailing at the time those statements were made, when considered with the age, character and situation of appellant, he was deprived of his choice to admit, to deny, or to refuse to answer. Phillips v. State, 248 Ala. 510, 28 So.2d 542, and cases cited; Lee v. State, 265 Ala. 623, 93 So.2d 757. The defendant denied making a statement to the soldier, Furman Jones, or to Elijah Honeycutt, and testified that Officer Grimes "lied." No question was asked of him tending to elicit any statement to the effect that he had been mistreated in any way.

■ During the cross-examination of the defendant by the chief prosecuting officer, the following occurred:

"Q. Remember talking to Mr. Dean about this case after your arrest and telling him that you were running forty miles an hour? A. I didn't tell him that.

"Q. And did you tell him that you were, that you knew you were going too fast? A. No, sir."

Thereafter the witness was cross-examined at length concerning his actions before and after the shooting. While this examination was taking place, one of the attorneys for the defendant objected to the solicitor's examining the defendant from what appeared to be a written statement and asked that the defendant be permitted to see that statement.

The trial court thereupon directed the following remarks to the solicitor: "I take it you are reading from a statement made by the witness and I think it is—it has already been revealed—asked if that was a statement made to Officer Dean, then of

course, the witness would have a right to see it." The solicitor replied: "I didn't ask him if this was a statement he made to Officer Dean. I am asking questions, if the court please, and I certainly would be, would like to be able to look in my file once in a while when I am examining a witness and read my memoranda." Following that statement by the solicitor the trial court said: "I will let him ask. Go ahead." After further cross-examination concerning the defendant's actions before and after the shooting the following transpired:

"Mr. Edwards: Your Honor please, counsel is attempting to lay a predicate and I want to point out the fact that he cannot lay a predicate unless he reads from the statement; and if he reads from the statement, then the witness is entitled to see the statement and I am going to point out now, because I know he is going to try to attempt to impeach this witness, and therefore, if he is going to lay a predicate for that purpose, I insist that at this time that this witness must have the right to read that statement.

"Mr. Sullinger [Solicitor]: I don't know why he is trying to conduct my examination, if the Court please. I want to conduct it in a way I best know how and I shall do that, with the permission of the Court. He is searching through my mind, trying to or figuring out what I am going to do in the next fifteen, twenty, thirty minutes and I think that is highly improper.

"The Court: Proceed.

"Mr. Edwards: We except."

■ The rule is well established that a witness is not bound to answer as to matters reduced to writing by himself or another and subscribed by him until after the writing has been produced and read or shown to him. Wills v. State, 74 Ala. 21; Kennedy v. State, 85 Ala. 326, 5 So. 300;

## 158

Manning v. State, 217 Ala. 357, 116 So. 360; Kennedy v. State, 240 Ala. 89, 196 So. 884; Parker v. State, 266 Ala. 63, 94 So.2d 209; Moore v. State, Ala.App., 97 So.2d 166. See Lawson v. State, 36 Ala. App. 438, 57 So.2d 643; Weaver v. State, 33 Ala.App. 207, 31 So.2d 593.

After the defendant rested his case, the State called Officer Dean as a witness. He testified that the defendant had made a voluntary statement to him, which had been reduced to writing and signed by the defendant. This writing was admitted in evidence over the strenuous objection of the defendant on the ground that it was the written statement used by the solicitor in the cross-examination of the defendant and was being introduced for the purpose of impeaching the defendant, although he had been denied the right to examine the statement before being questioned concerning its contents. The written statement was admitted by the trial court at that point in the trial for the purpose of impeaching the defendant.

We are of the opinion that the admission in evidence of this written statement under the circumstances revealed by this record must work a reversal of this cause.

In Parker v. State, supra, we said in part as follows:

"An analysis of the cases relied on by the appellant shows that they are not controlling in the factual situation in the case at bar and that the trial court was not in error. The cases cited in brief by appellant control where the statement was written by the witness or was signed by the witness or it was prior sworn testimony of the witness. *In these three situations if the statement is to be later introduced in evidence to impeach the witness, the statement must be first shown to the witness in order to allow the witness to refresh his memory and to explain any inconsistency * * *."* (Emphasis supplied.) 266 Ala. 69, 94 So.2d 214.

In the instant case, the statement introduced in evidence was written and it was signed by the defendant. He was not permitted to see the statement in order to refresh his memory or to explain any inconsistency, although his counsel requested that he be permitted to do so.

In the brief filed here on behalf of the State, it is not insisted that the written statement was not erroneously admitted in evidence. It is the State's position that the error was harmless to the defendant and therefore should not work a reversal of the cause. It is true that the written statement contains substantially the same version of the circumstances immediately surrounding the shooting as was given by the defendant on his direct examination. But the written instrument contains numerous statements which are apparently in contradiction of other aspects of the defendant's testimony on cross-examination and thereby the defendant was placed in a position before the jury of having told untruths either on the stand or in the making of the written statement introduced.

The State's effort to obtain a conviction of murder in the first degree was based in part at least on the testimony of Officer Grimes to the effect that the defendant after obtaining the pistol stepped back and fired two or three shots at the deceased. Although the defendant does not seem to have been asked the specific question as to whether or not he made such a statement to Officer Grimes, the testimony which he gave depicts an entirely different situation, which if believed by the jury might well have resulted in a different verdict. Under these circumstances the testimony which was improperly admitted and which reflected upon the defendant's veracity cannot be said to have been without injury to the defendant. See Wise v. State, 11 Ala.App. 72, 66 So. 128. We do not feel that the rule of error without injury should be applied to this case where a man's life is at stake.

For this error the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

All the Justices concur.

### On Application for Rehearing

The State contends that we should grant its application for rehearing and affirm the judgment of conviction for the reason that we erred " * * * in holding without qualification that the State should not be allowed to question the witness about facts concerning his activities surrounding the crime because these facts were also contained in a written statement previously made by the witness, which was not then shown the witness." In the original opinion we said: "The rule is well established that a witness is not bound to answer as to matters reduced to writing by himself or another and subscribed by him until after the writing has been produced and read or shown to him." That language was approved by this court in Wills v. State, 74 Ala. 21, cited in the original opinion, and means, of course, that a witness cannot be questioned concerning his written statement previously made until after such writing has been exhibited to the witness.

The judgment of the trial court was not reversed because of the cross-examination of the defendant in that we were not satisfied that the record conclusively shows that the solicitor questioned the witness concerning the written statement which he had previously signed. The judgment was reversed because on rebuttal the State introduced in evidence a written statement signed by the defendant for the sole purpose of impeaching him, although the statement had not been previously shown to the defendant. Under our holding in Parker v. State, 266 Ala. 63, 94 So.2d 209, cited in the original opinion, such action on the part of the State constituted reversible error.

Opinion extended and application for rehearing overruled.

All the Justices concur.